# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PATRICK A. FLAYTER,

                Plaintiff,

v.

ED WALL, JAMES GREER,
DR. DAVID BURNETT,
PATRICIA SIEDSCHLAG,
GARY BRIDGWATER, MD,
BELINDA SCHRUBBE,
DR. P. BELGODO, DR. SUMNICHT,
SARA KROPP,
DR. PATRICK MURPHY,
JUDY P. SMITH, SGT. HANSON,
SGT. KONKEL, and SGT. SCHWEB,

                Defendants.

Case No. 13-CV-77-JPS

**SCREENING ORDER**

The plaintiff, a Wisconsin state prisoner, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed *in forma pauperis*. He has been assessed and paid an initial partial filing fee of $21.75.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

Case 2:13-cv-00077-JPS   Filed 05/29/13   Page 2 of 18   Document 20

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

1.    **Complaint Allegations**

The plaintiff is incarcerated at Oshkosh Correctional Institution ("OSCI"). He is suing: Ed Wall, Secretary of the Wisconsin Department of Corrections ("DOC"); James Greer, Director of the DOC Bureau of Health Services; Dr. David Burnett, Bureau of Health Services Medical Director; Patricia Siedschlag, Health Services Unit Manager of Columbia Correctional Institution ("CCI"); Dr. Gary Bridgewater, CCI; Belinda Schbrubbe, Health Services Unit Manager at Waupun Correctional Institution ("WCI"); Dr. Sumnicht, WCI; Dr. P. Belgado, WCI; Sara Kropp, Health Services Unit Manager at OSCI; Dr. Patrick Murphy, OSCI; Judy Smith, OSCI Warden; and Sergeants Hanson, Konkel, and Schweb, OSCI.

According to the complaint, on December 22, 1990, while working for Amtrak, the plaintiff was involved in a serious accident. He suffered three fractured ribs, and a bruised, punctured, and collapsed left lung. The plaintiff spent six days in intensive care after the accident and physicians treated him for continuing back and chest pain until he was arrested on March 17, 1991. Following his arrest, the plaintiff was held in the Milwaukee County Jail ("Jail") for about sixteen months during which time he saw numerous doctors for pain. Tests revealed calcification of the right coronary artery and aortic valve. One doctor recommended surgery on the rib injury site but the Jail denied the procedure because it was too close to the plaintiff's trial date. Instead, the doctor prescribed medication for pain and back muscle spasms.

On July 30, 1992, the plaintiff underwent intake into the DOC at Dodge Correctional Institution. He was transferred to CCI on September 28, 1992, where he remained until his June 13, 2002 transfer to WCI, except for his incarceration at out-of-state institutions between March 20, 1998 and October 31, 2001. On June 13, 2008, the plaintiff transferred from WCI to OSCI, where he remains today.

The plaintiff alleges that beginning in 1992, the defendants have violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments because they have continually provided him with wrongful medical care causing pain, suffering, and injury. He further alleges that he did not realize the extent of the inadequate treatment until June 16, 2009, when he was preparing this lawsuit and he discovered a letter dated February 17, 1992, which referred to his health condition and suspicions of possible upcoming serious health diseases. (Compl. ¶ 16.) The letter, written by Dr. Haasler, a doctor the plaintiff saw at the Milwaukee County Medical

Complex while in the Jail, to Dr. Casanova, a referring physician at the time, referred to the plaintiff's health condition and suspicions of possible future diseases. According to the plaintiff, the following statements from the letter "has profound ramification on early detection of a possible serious medical disease that should have been looked into . . ., which could have been done at a [pain clinic], if only the plaintiff would have been sent there as was recommended by the off-site expert Dr. Pellett, in his letter to CCI HSU on October 5, 1993." (*Id.*) The letter states in relevant part:

> That plaintiff's coronary arteries are calcified significantly.
>
> Of greater concern to me at the present time is the patient's reported chest pain and nausea in the presence of coronary artery calcification. Since Mr. Flayer was a smoker and is a relatively anxious person, not to mention having a recent cholesterol of 197, his epigastric pain and nausea complex might well be coronary in etiology.

(*Id.*)

The complaint sets forth in detail the alleged wrongful medical care plaintiff has received while in DOC custody, beginning in 1992. Specifically, the plaintiff alleges that on October 7, 1992, January 26, 1993, April 12, 1993, and April 19, 1995, Dr. Burnett denied his repeated referrals to the University of Wisconsin Hospital's Pain Clinic Management Team for ongoing chest pain, in violation of the Eighth Amendment. (Compl. ¶ 8.)

On February 5, 1993, March 9, 1993, and June 17, 1993, defendant Siedschlag allegedly violated his First Amendment rights when she removed, concealed, or withheld his medical records from the Milwaukee County Medical College and the University of Wisconsin. (*Id.* ¶ 9.)

On September 12, 1993, defendant Siedschlag allegedly violated the plaintiff's First and Fourth Amendment rights when she acquired his incoming mail from the custodian of records that he wrote requesting his medical records. (*Id.* ¶ 11.) Siedschlag's conduct is allegedly the biggest aggravating factor to the cause of the plaintiff's severe diffused coronary artery disease, pain and suffering, and mental and emotional anguish. (*Id.* ¶ 13.)

On February 5, 1993, March 9, 1993, June 17, 1993, and September 12, 1993, defendant Siedschlag allegedly violated the plaintiff's Fourteenth Amendment rights when she directed employees to remove, conceal, or withhold the plaintiff's medical records when he wanted to review to look for evidence. In addition, on September 12, 1993, she allegedly stole the plaintiff's incoming mail containing medical records from the custodian of records at the Milwaukee County Medical College. (*Id.* ¶ 18.)

On December 29, 1993, defendant Dr. Burnett allegedly violated the plaintiff's Eighth Amendment rights when he continued on a course of wrongful treatment and with callousness and wanton indifference caused the plaintiff years of pain and suffering. Dr. Burnett allegedly chose the easier, least efficacious, and cheapest method of treatment for the plaintiff's pain problems. He allegedly only allowed medications that aggravated the plaintiff's condition and led to his diagnosis of severe diffused coronary artery disease in 2007. (*Id.* ¶ 19.)

On May 17, 1995, Dr. Burnett allegedly violated the plaintiff's Eighth Amendment rights when he failed to ensure that he received proper diagnostic testing for his condition and pain. (*Id.* ¶ 20.)

Between February 1993 and December 1997, defendant Siedschlag allegedly violated the plaintiff's Eighth Amendment rights when she failed

to ensure the plaintiff received his prescribed medications in a timely manner, and allegedly failed to advise him of expiration dates so he could let a doctor know that a renewal was near.  (*Id.* ¶ 21.)

Between March 20, 1998 and October 31, 2001, defendant Walls allegedly violated the plaintiff's Eighth Amendment rights by failing to ensure an environment for safety, health, and well-being when the plaintiff was transferred out-of-state.  (*Id.* ¶ 22.)

Between March 20, 1998 and October 31, 2001, defendant Greer allegedly violated the plaintiff's Eighth Amendment rights when he failed to ensure the plaintiff's safety and well-being when he was transferred out-of-state.  The plaintiff was only prescribed Ibuprofen which aggravated his condition.  (*Id.* ¶ 23.)

On May 14, 2002, Dr. Bridgewater allegedly violated the plaintiff's Eighth Amendment rights when he told the plaintiff to go to Alcoholics Anonymous meetings for his chronic pain problems.  (*Id.* ¶ 24.)

On May 28, 2002, defendant Siedschlag allegedly violated the plaintiff's Eighth Amendment rights based on her response to the inmate complaint examiner after the plaintiff filed an inmate complaint regarding Dr. Bridgewater's referral to Alcoholics Anonymous meetings.  (*Id.* ¶ 25.)

The plaintiff allegedly transferred to WCI on June 13, 2002.  Between June 13, 2002 and mid-July 2003, Dr. Belgado allegedly violated the plaintiff's Eighth Amendment rights when he failed to attain proper diagnostic testing for chronic ongoing chest pains and medical care that was not available in the prison setting.  (*Id.* ¶ 26.)

In early 2007, Dr. Sumnicht allegedly violated the plaintiff's Eighth Amendment rights when he informed him that he and defendant Schrubbe would treat him for ongoing chest pain their way, which left the plaintiff

with worsening chest pains, pain, and suffering. The choice of the easier, cheaper method of treatment with Ibuprofen aggravated the plaintiff's severe diffused coronary artery disease. (*Id.* ¶ 28.)

On November 26, 2007, defendant Schrubbe allegedly violated the plaintiff's Eighth Amendment rights when she advised him that he could work in the main kitchen food services. On November 29, 2007, while being escorted to work, the plaintiff had "some type of heart attack and fall-out" which aggravated his medical condition. He was taken to the Waupun Memorial Hospital Emergency Room and diagnosed with severe diffused coronary artery disease. (Compl. ¶ 29.)

Between July 10, 2002 and March 3, 2008, defendant Schrubbe allegedly violated the plaintiff's Eighth Amendment rights when she failed to ensure the plaintiff was housed on the lowest tiers in the cell hall, as prescribed by his treating physician as a special needs restriction. (Compl. ¶ 30.)

The plaintiff allegedly arrived at OSCI on June 13, 2008. On July 30, 2008, Sergeant Hanson allegedly violated the plaintiff's Eighth Amendment rights when he refused to follow the doctor's orders for the plaintiff to use a wheelchair with an aid to push it for long-distance movement. (Compl. ¶ 34.)

From June 13, 2008 to May 22, 2009, Dr. Murphy allegedly violated the plaintiff's Eighth Amendment rights when he delayed seeing the plaintiff for six months. Dr. Murphy also allegedly delayed three months to send the plaintiff to UW Cardiology for treatment of his persistent chest pains. (Compl. ¶ 35.)

On April 9, 2009, defendant Hanson allegedly violated the plaintiff's Eighth Amendment rights when he "exhibited some type of extreme

equivocal conductorial power" over the plaintiff because he told him to pack up to move to another cell and the plaintiff almost passed out from chest pains from being forced to pack too quickly. (Compl. ¶ 36.)

From June 13, 2008 until May 22, 2009, defendant Kropp allegedly violated the plaintiff's Eighth Amendment rights when she failed to ensure he was seen by the treating physician in a timely manner. (Compl. ¶ 37.)

Between September 22, 2009 until March 19, 2010, defendant Kropp allegedly violated the plaintiff's Eighth Amendment rights when she failed to ensure that the plaintiff see a doctor in a timely manner. (Compl. ¶ 39.)

On May 26, 2010, defendant Konkel allegedly violated the plaintiff's Eighth Amendment rights when he disobeyed a doctor's prescribed special needs order for a wheelchair with aid for the plaintiff for long-distance movement off the unit. (Compl. ¶ 41.)

In June and July, 2010, defendant Kropp allegedly violated the plaintiff's Eighth Amendment rights when she failed to ensure the treating physician received notification when medication prescriptions expired and needed renewals. (Compl. ¶ 42.)

Between March 15, 2010, and April 11, 2011, defendant Kropp allegedly violated the plaintiff's Eighth Amendment rights when she failed to properly review and make medical decisions as to renewals and denials of doctor prescribed special needs related to the plaintiff's numerous, ongoing health problems. (Compl. ¶ 43.)

On January 21, 2011, defendant Schweb and Officer Gallenburg allegedly violated the plaintiff's Eighth Amendment rights when they refused to allow him to use a special needs wheelchair with aid to go to the HSU. (Compl. ¶ 44.)

On June 15, 2009, defendant Kropp allegedly violated the plaintiff's First, Fourth, and Eighth Amendment rights when she wrote a letter to the UW Clinic Office Staff, placing an arbitrary and unreasonable restraint on the plaintiff's free speech through search and seizure, by stating not to share medical recommendations with the plaintiff. (Compl. ¶ 45.)

Between October 12, 2010 and May 5, 2011, and also on March 13, 2012, defendant Kropp allegedly violated the plaintiff's Eighth Amendment rights by failing to ensure access to health care diagnostic testing off-site in a timely manner. (Compl. ¶ 46.)

Warden Smith has allegedly been put on notice of violations that occurred at OSCI (Compl. ¶¶ 33-48) and such violations continue today. She failed to take action after knowing about her subordinates' violations, which continue today. (Compl. ¶ 48.)

Defendant Greer and Wall, as the Director of the DOC Bureau of Health Services and Secretary of the DOC, respectively, have allegedly been put on notice of abusive conduct beginning in 1992 and continuing today. They failed to act after becoming aware of the violations set forth in the complaint. (Compl. ¶¶ 50, 52.)

For relief, the plaintiff seeks compensatory and punitive damages.

**2.      Discussion**

The complaint allegations implicate the plaintiff's rights under the Eighth Amendment for deliberate indifference to a serious medical need and the First Amendment based on interference with his mail. However, the complaint is lacking in several respects, as set forth below.

As an initial matter, it appears that portions of the plaintiff's complaint are barred by claim preclusion (*res judicata*) because he raised identical claims

in a previous case.[1]  *See Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002) (citing *Federated Dep't Stores, Inc. V. Moitie*, 452 U.S. 394 (1981)).  The plaintiff is advised that he may not proceed on claims that he previously litigated and that were resolved on the merits.  *See Ross ex rel. Ross v. Bd of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007).

Next, a number of the plaintiff's claims are probably barred by the statute of limitations.  Section 1983 claims are subject to Wisconsin's six-year personal rights statute of limitations, Wis. Stat. § 893.53.  *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997); *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989).  Thus, any of the plaintiff's allegations that took place before January 22, 2007, would be barred.  However, it is not entirely clear that all of the plaintiff's allegations preceding that date would be barred because he also alleges that he did not become aware of some of these allegations until 2009.  A § 1983 claim accrues on "the date that the plaintiff knew or should have known that his constitutional rights had been violated."  *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).  A district court may dismiss a complaint if it is obvious that the plaintiff has failed to file suit within the applicable statute of limitations.  *Limestone Dev. Corp., v. Vill. of Lemont*, 520 F.3d 797, 802 (7th Cir. 2008); *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002).  Thus, as it is not "obvious"

---

[1] In *Flayter v. Wis. Dep't of Corr.*, Case Number 00-C-429-C (W.D. Wis. Sept. 29, 2000), United States District Judge Barbara B. Crabb screened the plaintiff's 116-page complaint and found that he failed to state a claim.  The United States Court of Appeals for the Seventh Circuit affirmed Judge Crabb's dismissal on the merits.  *See Flayter v. Wis. Dep't of Corr.*, 16 Fed. Appx. 507, 509-10 (7th Cir. Aug. 17, 2001).  The appeals court also held that Flayter's complaint was subject to dismissal because it violated Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 508-09.

Case 2:13-cv-00077-JPS   Filed 05/29/13   Page 11 of 18   Document 20

that the plaintiff's claims are time-barred, the court will not dismiss his claims as barred by the statute of limitations at this time.

In addition to these obstacles, the complaint is 46 pages long.  It contains multiple abbreviations, a 4-page non-alphabetized "abbreviation sheet" to decipher the complaint abbreviations, and an "appendix" consisting of hundreds of pages of attachments.  In short, the complaint violates Federal Rule of Civil Procedure 8(a)(2) which requires "a short and plain statement" of the claim.  A prolix and confusing complaint should be dismissed because it makes it difficult for the defendants to file a responsive pleading and for the court to conduct orderly litigation.  *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994).  While dismissal under Rule 8(a) is permitted if a complaint's length and lack of clarity make it unintelligible, leave to replead should ordinarily be granted.  *See Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003) (citations omitted).

Finally, based on the court's reading of the complaint, it appears that the plaintiff is attempting to improperly bring unrelated claims in a single case.  As instructed by the Seventh Circuit Court of Appeals, under the controlling principle of Rule 18(a), Federal Rules of Civil Procedure, "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Specifically, Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party."  Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George*, 507 F.3d at 607.

Moreover, the court in *George* reminded district courts that Rule 20, Federal Rules of Civil Procedure, applies as much to prisoner cases as it does to any other case. 507 F.3d at 607. Under Rule 20, joinder of multiple defendants into one action is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."

The court finds that the complaint violates Rules 18 and 20 insofar as it advances unrelated claims against multiple defendants at four separate prisons. The *George* court instructed that such "buckshot complaints" should be "rejected." *Id.*

Based on the foregoing, the court will strike the original complaint submitted on January 22, 2013. The plaintiff will be allowed to file an amended complaint in this case incorporating only properly related claims. Any unrelated claim not pursued in this case must be brought in a separate action. The plaintiff must use the enclosed civil rights complaint form for his amended complaint.

The plaintiff is advised that because an amended complaint supersedes a prior complaint, any matters not set forth in the amended complaint are, in effect, withdrawn. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). If the plaintiff files an amended complaint, it will become the operative complaint in this action, and the court will screen it in accordance with 28 U.S.C. § 1915A.

Further, the plaintiff is advised that 42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a

constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* Thus, with respect to any claim or claims advanced in his amended complaint, the plaintiff must identify the individual defendants and specify the manner in which their actions, or failure to take action, violated his constitutional rights.

### 3.     Additional Matters

#### 3.1     Motion to Pay Filing Fee From Release Account

The plaintiff has filed a motion for order to pay the remainder of the filing fee from his release account. (Docket #7). A review of the plaintiff's trust account statement reveals that he has sufficient assets and means to pay the remainder of the filing fee from his release account. Thus, his motion will be granted.

#### 3.2     Motion for *Pro Bono* Counsel

The plaintiff has filed a request for counsel. (Docket #9). Although civil litigants do not have a constitutional or statutory right to appointed counsel, the court has the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (citing *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995)). As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. *Pruitt*, 503 F.3d at 654; *Zarnes*, 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear competent to try the case himself and, if not, would the presence of counsel likely make

a difference in the outcome of the case. *Pruitt*, 503 F.3d at 654-655 (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)).

In this case, the plaintiff has provided evidence that he has attempted to obtain legal counsel on his own. However, the plaintiff's filings indicate that he is capable of litigating this case himself. He submitted a detailed complaint and several motions and, at this stage of the proceedings, the court has directed him to submit an amended complaint. Therefore, at this juncture, the court does not believe that the presence of counsel is likely to make a difference in the outcome of this case. Accordingly, his motion will be denied.

### 3.3    Motion for Injunctive Relief

The plaintiff has filed a motion for injunctive relief. (Docket #11). He believes that he will be at risk for retaliation and harassment based on filing this lawsuit. In effect, he seeks an order "to be left alone, and with NO special celling, or any other special things" based on filing this case. (Mot. for Inj. at 10.)

A party seeking a preliminary injunction must demonstrate that he is reasonably likely to succeed on the merits, that he is experiencing irreparable harm that exceeds any harm his opponent will suffer if the injunction issues, that he lacks an adequate remedy at law, and that the injunction would not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently

that the injunction should be denied. *Id.*; *see Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004).

Here, the plaintiff's request is unrelated to his complaint allegations. Moreover, his concerns are speculative. The plaintiff has not shown he is entitled to injunctive relief. This, his motion will be denied.

### 3.4 Motions for Leave to File Excess Pages, and to File Supplemental Pleadings

The plaintiff has filed a motion for leave to file excess pages, and a motion to file supplemental pleadings. (Dockets #5, #13). He seeks leave to file excess pages, and to supplement the complaint with allegations of ongoing violations of his constitutional rights. However, as the plaintiff has been directed to file an amended complaint, these motions are moot, and will be denied as such.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #3) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file excess pages (Docket #5) be and the same is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the plaintiff's motion to pay remainder of filing fee from release account (Docket #7) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee submit the remainder of the filing fee ($328.25) from the plaintiff's release account to the Clerk of Court.

**IT IS FURTHER ORDERED** that the plaintiff's motion for counsel (Docket #9) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for injunctive relief (Docket #11) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** the plaintiff's motion for supplemental pleadings and permissive joinder (Docket #13) be and the same is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for more time to pay the initial partial filing fee (Docket #18) be and the same is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the complaint submitted on January 22, 2013 be and the same is hereby stricken.

**IT IS FURTHER ORDERED** that the plaintiff is directed to file an amended complaint on or before **July 8, 2013**, which contains only related claims in accordance with this order. **The plaintiff must submit the complaint on the enclosed civil rights complaint form.**

**IT IS FURTHER ORDERED** that the Clerk's Office mail the plaintiff a prisoner civil rights complaint form along with this order.

**IT IS FURTHER ORDERED** that if the plaintiff does not file an amended complaint by **July 8, 2013** that complies with the requirements of Rules 18 and 20, Federal Rules of Civil Procedure, this action will be dismissed for failure to prosecute.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

Honorable J.P. Stadtmueller
% Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Dated at Milwaukee, Wisconsin, this 29th day of May, 2013.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge